UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**JONATHAN WILLIAMS**                                                                                          **PLAINTIFF**

v.                                                                          **CIVIL ACTION NO. 1:23-CV-P159-JHM**

**GARY MARTIN**                                                                                                **DEFENDANT**

**MEMORANDUM OPINION**

Plaintiff Jonathan Williams, a prisoner proceeding *pro se* and *in forma pauperis*, initiated this 42 U.S.C. § 1983 action. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, Plaintiff's claims will be dismissed.

**I. STATEMENT OF CLAIMS**

Plaintiff, a pretrial detainee at the Logan County Detention Center (LCDC), sues LCDC Captain Gary Martin in his individual and official capacities. Plaintiff alleges that on November 11, 2023, Martin moved him into an already occupied one-man cell. According to the complaint, LCDC inmates sleeping on the floor are to be provided two mattresses, but when Plaintiff asked for two mattresses, Martin "became irate," grabbing Plaintiff's Qur'an, and throwing it on the floor. Plaintiff states that Martin then proceeded to do "something" with his prayer rug, then grabbed Plaintiff, slammed him to the floor, and handcuffed him. Plaintiff alleges that Martin then asked Plaintiff to release his prayer rug, stating that "he would place it on my back. I refused stating why would I do that when you just threw my Qur'an on the floor."

According to Plaintiff, Martin then placed him in another cell, where he again did not provide mattresses for Plaintiff. Plaintiff states that after an hour, he lay on the dirty floor and that

two hours later Martin brought him one mattress instead of two. At the same time, Plaintiff alleges, Martin brought another inmate to the next-door cell where he furnished the inmate with two mattresses and "gently" placed the inmate's Bible on the table.

Plaintiff alleges violations of his First Amendment right to freedom of religion and the Fourteenth Amendment's Due Process and Equal Protection Clause. He also refers to Nineteenth Amendment "racial segregation" and the Fifth Amendment's Equal Protection Clause.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### A. Official-capacity claims

"Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). This means that Plaintiff's official-capacity claims are actually against Logan County, Martin's employer.

A municipality such as Logan County cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged constitutional deprivation. *Id.* To state a claim against a municipality, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability" of the entity under § 1983. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Here, Plaintiff's allegations pertain only to himself, and he does not allege that any constitutional violation occurred pursuant to a policy or custom of Logan County. Accordingly, Plaintiff's official-capacity claims must be dismissed for failure to state a claim upon which relief may be granted.

### B. Individual-capacity claims

### 1. Freedom of religion

Plaintiff states that Martin "grabb[ed]" his Qu'ran and threw it on the floor and that Martin "tr[ied] to do [] something with [Plaintiff's] prayer rug." He alleges that his "freedom of religion" under the First Amendment was violated.

The First Amendment, which is applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. 1. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tennessee*, No. 09-5529, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)).

"To show a violation of First Amendment Free Exercise rights, a prisoner 'must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.''" *Sanders v. Macauley*, No. 22-1502, 2022 WL 16729580, at *4 (6th Cir. Aug. 10, 2022) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). Plaintiff does not allege that he holds a sincere religious belief.

Even assuming that Plaintiff holds a sincere religious belief, presumably as a Muslim, to show a violation of the First Amendment would require the imposition of a "*substantial burden*" on Plaintiff's exercise of his religion. *Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (emphasis in original). Plaintiff has not alleged facts suggesting a substantial burden on the exercise of his religion. He does not allege, for example, that his Qu'ran or prayer rug were confiscated or that he was in any way prohibited from using them in practicing his religion. The Court will dismiss this claim for failure to state a claim upon which relief may be granted.

Similarly, the Religious Land Use and Institutionalized Persons Act (RLUIPA) prohibits the governmental imposition of a "substantial burden on the religious exercise" of an inmate unless the government establishes that the burden furthers a "compelling governmental interest" through the "least restrictive means[.]" 42 U.S.C. § 2000cc-1(a). The term "substantial burden" as used in RLUIPA is given the same interpretation as the concept of substantial burden on religious exercise in a First Amendment inquiry. *Living Water Church of God v. Charter Twp. Meridian*, 258 F. App'x 729, 733-34 (6th Cir. 2007). Consequently, the Court holds that Plaintiff fails to state a claim under the RLUIPA as well.

*2. Due Process Clause*

Plaintiff alleges that after he requested two mattresses in one cell he was not provided with any mattresses and was instead moved to another cell. He again was not given any mattresses for three hours, at which time he was given one mattress instead of the two mattresses he alleges that he was entitled to.

"While the Eighth Amendment provides a convicted prisoner the right to be free from cruel and unusual punishment, it is the Due Process Clause of the Fourteenth Amendment that provides the same protections to pretrial detainees." *Thomas v. Mayfield Police Dep't*, No. 5:21-CV-P97-TBR, 2021 WL 6135560, at *4 (W.D. Ky. Dec. 29, 2021). Thus, the Fourteenth Amendment applies to conditions-of-confinement claims brought by pretrial detainees. *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 591 (6th Cir. 2021). This standard has two prongs. To satisfy the first prong, a plaintiff must allege a deprivation which is "objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). To satisfy the second prong under the Fourteenth Amendment, a plaintiff must show that defendants acted "deliberately" and "recklessly

'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner*, 14 F.4th at 596 (quoting *Farmer*, 511 U.S. at 836).

Here, Plaintiff's allegations related to not having a mattress for three hours or only having one mattress do not satisfy the objective prong of the standard. *See, e.g.*, *Velasquez v. Lewis*, No. 4:20CV-00172-JHM, 2022 WL 1914072, at *2–3 (W.D. Ky. June 3, 2022) (holding that no Fourteenth Amendment due-process violation occurred where pretrial detainee did not have mattress or bedding from 8:00 a.m. until 10:00 p.m.).

Plaintiff also does not state a Fourteenth Amendment procedural due process claim based on his allegations related to his mattress because his allegations do not rise to the level of an "atypical and significant hardship" under *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Sanders v. Smith*, No. 1:11-CV-892, 2011 WL 5921426 at *17 (W.D. Mich. Nov. 27, 2011) (holding that more than 30 days on a "mattress, sheets, and bed covering restriction" with no clothes was not so "atypical and significant" as to give rise to a Fourteenth Amendment due-process claim); *Blair v. Ky. State Penitentiary*, No. 5:21-CV-P75, 2022 WL 660792, at *6–7 (W.D. Ky. Mar. 4, 2022) (collecting cases). The Court will dismiss Plaintiff's due-process claims for failure to state a claim upon which relief may be granted.

### 3. Equal Protection Clause

Plaintiff alludes to disparate treatment in that Martin threw his Qu'ran rather than placing it as he did for another inmate's Bible and providing Plaintiff with only one mattress instead of the two mattresses he provided for the inmate with the Bible.

Because equal-protection claims against the federal government are evaluated under the Fifth Amendment and equal-protection claims against state and local governments are evaluated under the Fourteenth Amendment, it is the Fourteenth Amendment's equal-protection clause

which applies to Plaintiff's claim against Martin, a county employee. *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

The Fourteenth Amendment's Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause . . . 'is essentially a direction that all persons similarly situated should be treated alike.'" *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). However, the Equal Protection Clause does not require that all inmates be treated exactly alike. *See Thompson v. Commonwealth of Ky.*, 712 F.2d 1078, 1080-82 (6th Cir. 1983). Further, some level of significance is required in order for the actions of prison officials to implicate constitutional concerns. "*De minimis* events simply do not state constitutional claims." *A'la v. Cobb*, 208 F.3d 212 (6th Cir. 2000) (citing cases).

Plaintiff's claims, even if true, do not implicate the Plaintiff's equal-protection rights because the alleged disparate treatment is simply *de minimis*. *See Browner v. Maynard*, No. 97–3901, 1998 WL 211797, at *1 (6th Cir. Apr. 24, 1998) (stating that plaintiff's equal-protection claim was properly dismissed because allegations of "mere harassment" constitute a *de minimis* injury which does not violate the constitution); *Taylor v. City of Falmouth*, 187 F. App'x 596, 601 (6th Cir. 2006) (per curiam) (holding that an isolated, insensitive remark is insufficient to support violation of the Equal Protection Clause); *Smith v. Lemaire*, No. 1:14-CV-644, 2015 WL 6133144, at *2 (W.D. Mich. Oct. 16, 2015) (harassment insufficient to state an equal-protection claim). The Court holds that Plaintiff fails to state an equal-protection claim.

### 4. Nineteenth Amendment

The Nineteenth Amendment provides the "right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex." U.S.

Const. amend. XIX. It does not pertain to racial segregation, and the complaint makes no mention of Plaintiff attempting to vote or being prevented from voting on the basis of his sex. As such, Plaintiff has not stated a claim for relief under the Nineteenth Amendment.

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss this action.

Date: April 9, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4414.009